# In the United States Court of Federal Claims

BID PROTEST
No. 15-489C
Filed Under Seal: January 11, 2017
Reissued for Publication: January 13, 2017[*]

_____

)
YORK TELECOM CORPORATION, )
)
              Plaintiff, )    Post-Award Bid Protest; Judgment upon
) the Administrative Record, RCFC 52.1;
v. ) Supplementing the Administrative
) Record; Standing; FAR 52.212-1; Non-
THE UNITED STATES, ) Manufacturer Rule; NAICS Code Size
) Standard.
              Defendant. )
)
_____

    *Daniel J. Donohue*, Counsel of Record, *Walter A. I. Wilson*, Of Counsel, Polsinelli PC, Washington, DC, for plaintiff.

    *Elizabeth Anne Speck*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., *Victoria H. Kauffman*, Of Counsel, *Amber M. Hufft*, Of Counsel, *James A. Vatne*, Of Counsel, National Aeronautics and Space Agency, *Karen H. Holzen*, Of Counsel, United States Small Business Administration, for defendant.

## MEMORANDUM OPINION AND ORDER

<u>GRIGGSBY</u>, Judge

## I.    INTRODUCTION

    Plaintiff, York Telecom Company ("Yorktel"), brought this post-award bid protest matter, challenging the National Aeronautics and Space Agency's ("NASA") determination that Yorktel was not an eligible small business for a contract to provide certain information

---

[*] This Memorandum Opinion and Order was originally filed under seal on January 11, 2017 (docket entry no. 52), pursuant to the Protective Order entered in this action on May 14, 2015 (docket entry no. 14). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the Protective Order. The parties filed a joint status report on January 13, 2017, notifying the Court that they do not believe any information should be redacted (docket entry no. 54). And so, the Court is reissuing its Memorandum Opinion and Order dated January 11, 2017 without redactions.

technology products and services, because Yorktel failed to meet the size standard for the contract.  Yorktel has moved for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  The government has moved to dismiss this matter or, in the alternative, for judgment upon the administrative record, pursuant to RCFC 12(b)(1) and RCFC 52.1.  In addition, the government has filed a motion to supplement the administrative record with the declaration of the contracting officer for the contract.  For the reasons set forth below, the Court (1) **GRANTS-IN-PART** the government's motion to dismiss; (2) **GRANTS** the government's motion for judgment upon the administrative record; (3) **DENIES** Yorktel's motion for judgment upon the administrative record; and (4) **DENIES** the government's motion to supplement the administrative record.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this post-award bid protest matter, Yorktel challenges NASA's determination that Yorktel was not eligible for a contract to provide certain information technology products and services ("SEWP V Contract"), because Yorktel failed to meet the size standard for this small business set-aside contract.  *See generally* Compl.  Specifically, Yorktel alleges that NASA erred in determining that Yorktel is ineligible for award of the SEWP V Contract, because (1) the relevant request for proposals requires that offerors that are non-manufacturers of goods and services satisfy a 500-employee size standard and (2) Yorktel meets this size requirement.  *See, e.g., id.* at ¶¶ 2-3; *see* Pl. Mot. at 13-16.  As relief, Yorktel requests that the Court enjoin NASA from terminating its contract.  Compl. at ¶ 1, Requests for Relief.

#### 1.     The Request For Proposals

The salient facts in this bid protest matter are undisputed.  On August 16, 2013, NASA issued a Solutions For Enterprise-Wide Procurement ("SEWP V") request for proposals as a commercial item procurement ("RFP").  AR at 1-262.  The principal purpose of the procurement

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); the administrative record ("AR"); plaintiff's motion for judgment upon the administrative record ("Pl. Mot."); and defendant's motion to dismiss or, in the alternative, cross-motion for judgment upon the administrative record ("Def. Mot.").  Except where otherwise noted, the facts recited herein are undisputed.

is to provide information technology products and services to the entire federal sector. *Id.* at 2036. The contracts resulting from the procurement, including the SEWP V Contract, are multiple-award, indefinite-delivery, indefinite-quantity contracts. *Id.* at 16, 115. All of the contracts have a five-year ordering period, with a minimum amount of supplies and services to be ordered of $25.00 and a maximum value of $20 billion for each contract. *Id.* at 2089.

The multi-award procurement involved four different groups of offerors. *Id.* at 1. The relevant portion of the solicitation at issue in this matter contemplated the award of small business set-aside contracts. AR at 1. And so, NASA utilized the North American Industry Classification System ("NAICS") code and the accompanying size standards to determine whether an offeror was a small business. *See Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 475 n.1 (2006)); 13 C.F.R. §§ 121.401, 121.402; *see also Rotech Healthcare Inc. v. United States*, 71 Fed. Cl. 393, 407 (2006) ("*Rotech I*").

In this regard, NASA assigned the relevant category in this matter–Category B, Group C– a NAICS code of 541519 for Information Technology Value Added Resellers ("ITVAR"). AR at 1, 4; *see also* 13 C.F.R. § 121.201 (2015). This NAICS code requires that offerors meet a size standard of 150 employees or less. AR at 1, 4; 13 C.F.R. § 121.201.

The RFP also includes Federal Acquisition Regulation ("FAR") 52.212-1(a), which provides:

> INSTRUCTIONS TO OFFERORS - COMMERCIAL ITEMS (52.212-1) (JUL 2013)
>
> (a) *North American Industry Classification System (NAICS) code and small business size standard*. The NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet (SF 1449). However, the small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees.

AR at 130; *see also* 48 C.F.R. § 12.301(b)(1); 48 C.F.R. § 52.212-1. This provision derives from a provision in the Small Business Act known as the statutory non-manufacturer rule, which provides that:

> (A) An otherwise responsible business concern that is in compliance with the requirements of subparagraph (B) shall not be denied the opportunity to submit and have considered its offer for any procurement contract for the supply of a product

to be let pursuant to this subsection or subsection (a) of section 644 of this title solely because such concern is other than the actual manufacturer or processor of the product to be supplied under the contract.

(B) To be in compliance with the requirements referred to in subparagraph (A), such a business concern shall— . . .

> (ii) be a small business concern under the numerical size standard for the Standard Industrial Classification Code assigned to the contract solicitation on which the offer is being made; . . . .

15 U.S.C. § 637(a)(17).  The United States Small Business Administration ("SBA") has promulgated two relevant regulations to implement the statutory non-manufacturer rule.  First, 13 C.F.R. § 121.402 provides, in relevant part, that:

> A concern that submits an offer or quote for a contract or subcontract where the NAICS code assigned to the contract or subcontract is one for supplies, and furnishes a product it did not itself manufacture or produce, is categorized as a nonmanufacturer and deemed small if it has 500 or fewer employees and meets the requirements of § 121.406(b).

13 C.F.R. § 121.402(b)(2).  In addition, 13 C.F.R. § 121.406(b) provides, in relevant part:

> (1) A firm may qualify as a small business concern for a requirement to provide manufactured products or other supply items as a nonmanufacturer if it:
>
> > (i) Does not exceed 500 employees. . . .
>
> (3) The nonmanufacturer rule applies only to procurements that have been assigned a manufacturing or supply NAICS code.  The nonmanufacturer rule does not apply to contracts that have been assigned a service, construction, or specialty trade construction NAICS code.

13 C.F.R. § 121.406(b).

On November 25, 2015, Congress enacted the National Defense Authorization Act for Fiscal Year 2016 ("NDAA") which, among other things, amended the Small Business Act to provide that the statutory non-manufacturer rule applies when a contract "has as its principal purpose the supply of a product."  Pub. L. No. 114-92, 129 Stat 726 (Nov. 25, 2015).  In addition, the NDAA added the following language: "(C) Limitation.–This paragraph shall not apply to a contract that has as its principal purpose the acquisition of services or construction." *Id*.  On January 26, 2016, the SBA promulgated a final rule providing that the supply component of a small business-set aside ITVAR contract is required to comply with the non-manufacturer

rule. *Small Business Size Standards: Industries with Employee Based Size Standards Not Part of Manufacturing, Wholesale Trade, or Retail Trade*, 81 Fed. Reg. 4,436, 2016 WL 287502 (Jan. 26, 2016).

### 2.   Questions And Answers Regarding The Size Standard

Following the issuance of the RFP, the record evidence shows that NASA engaged in a question-and-answer process with offerors.  AR at 975-1183.  NASA advised all offerors that all of the questions and answers would be made available on a website and the agency provided all potential offerors with the link to that website.  AR at 1-2.

As a part of this question-and-answer process, NASA responded to several questions regarding the NAICS code and size standard for the SEWP V Contract.  *Id*. at 975-1183.  In particular, question 511 requested confirmation of the size standard and NASA replied that the size standard for the RFP was 150 employees.  *Id*. at 1069.  Question 861, also requested information about what a business with more than 150 employees should do to remain compliant with the RFP.  *Id*. at 1123.  In response, NASA replied that a business with more than 150 employees would be considered "other than small" and would need to complete a small business subcontracting plan to remain eligible for award, because the size standard for the contract was 150 employees.  *Id*. at 1123.

In addition, question 951 asked, "[i]f an offeror is under 500 employees, is it considered a small business under Category B, Group D?"[2]  *Id*. at 1139.  In response, NASA replied that "Yes, The size standard for NAICS 541519 as it applies to that function, is 150 employees.  For the NAICS Code under Category B, Group D, the firm has to meet the size standards."  *Id*. NASA also clarified that "as per SBA guidelines, the non-manufacturer rule does not apply," because the NAICS code for this particular contract–541519–is designated for services.  *Id*. at 1144 (response to question 976, part of set five); *see also id*. at 1156 (reiterating that the non-manufacturer rule does not apply in response to question 1055, part of set five).

NASA also issued twelve amendments to the RFP.  *See id*. at 263-974.  NASA attached cover letters to at least three of these amendments–Amendments 7, 8, and 10–that include a link to the website where offerors could find the questions and answers for the procurement.  *See id*.

---

[2] The NAICS code for Category B, Group C is the same as for Category B, Group D.  AR at 1.

at 265, 466, 631.  These cover letters provide that "[p]otential Offerors are requested to periodically monitor the website for updates."  *Id*. at 265, 466, 631.  All potential offerors received the cover letters.  *Id*. at 265, 466, 631.

In addition, the administrative record also shows that the cover letters for Amendments 7, 8, and 10 provide that "[a]ll of the documents related to this procurement, including this letter, the solicitation, attachments, and any amendments will be obtainable electronically."  *Id*. at 266, 466, 631.  The cover letters for Amendments 7, 8, and 10 are also signed by the contracting officer and the amendments are also signed by the contracting officer.  *Id*. at 266-67, 466-67, 632-33, 803-04.

### 3.    Contract Award And SBA Size Determination

On December 16, 2013, Yorktel submitted its offer to NASA.  AR at 1184-1820.  In its offer, Yorktel states that it is a non-manufacturer and that it employs between 150 and 500 employees.  *Id*. at 1184, 1193.

On April 10, 2015, NASA awarded the SEWP V Contract to Yorktel.  *Id*. at 2150-294.[3] But, the award decision was short-lived.  On April 21, 2015, NASA informed Yorktel that the agency awarded the SEWP V Contract to Yorktel in error, because the agency misinterpreted Yorktel's size as employing 150 employees or less.  *Id*. at 2299, 2307-09, 2312.  On the same date, NASA's contracting officer, LaShawn K. Feimster, informed Yorktel that NASA was suspending Yorktel's contract and referring the matter to the applicable SBA Area Office for a size determination.  *Id*. at 2307-09, 2322-23, 2333-34.  On April 22, 2015, Yorktel responded to Ms. Feimster explaining that Yorktel was a small business under the non-manufacturer rule size standard, as set forth in this solicitation at FAR 52.212-1(a).  *Id*. at 2313-14.

On or about April 29, 2015, Ms. Feimster filed a size determination protest with the SBA's Area 1 Government Contracting Office, requesting a "Post Award Size Determination of firm's Small Business size status" under the 150-employee size standard applicable under NAICS code 541519.  *Id*. at 2297-2298.  On May 21, 2015, the SBA Area I Office issued a decision concluding that Yorktel did not meet the applicable size standard for the procurement.

---

[3] NASA awarded 80 SEWP V contracts under Category B, Group C.  Def. Mot. at 4; *see* AR at 2049, 2061-68.

*Id*. at 2465-72.  In its size determination, the SBA concluded that the applicable size standard for the SEWP V Contract was 150 employees or less and that Yorktel did not meet this size standard.  *Id*.  The SBA also determined that NAICS code 541519 for the SEWP V Contract is a service code, and that the non-manufacturer rule did not apply to the contract.  *Id*. at 2467 (citing 13 C.F.R. § 121.406(b)(3)).

On June 2, 2015, Yorktel appealed the SBA's size determination to the SBA's Office of Hearings and Appeals ("SBA-OHA").  *Id*. at 2501-23.  On May 18, 2016, the SBA-OHA issued a decision finding that Yorktel is not an eligible small business for the procurement at issue.  *Id*. at 2620-30.  Specifically, the SBA-OHA determined that: (1) the inclusion of FAR 52.212-1 in the solicitation did not impose a 500-employee size standard on non-manufacturer offerors; (2) the non-manufacturer rule does not apply to the solicitation at issue, because the solicitation is not assigned a manufacturing or supply NAICS code; and (3) Yorktel failed to comply with the requirements in the statutory non-manufacturer rule and, thus, could not seek the protection of the rule.  *Id*.

### B.    Procedural Background

Yorktel filed the complaint in this matter on May 12, 2015.  *See generally* Compl.  On that same day, Yorktel filed motions for a temporary restraining order and for a preliminary injunction, as well as a memorandum in support of these motions.  *See generally* Pl. Mot. for TRO; Pl. Mot. for PI; Pl. Memo.  On May 13, 2015, the Court held in abeyance plaintiff's motions for a temporary restraining order and a preliminary injunction in light of an agreement reached between the parties, in which the government agreed to, among other things, lift the contracting officer's suspension of plaintiff's contract.  *See* Scheduling Order, May 13, 2015.  On May 14, 2015, the Court entered a Protective Order in this matter.  *See* Protective Order.

The government filed the administrative record in this matter on May 27, 2015.  *See generally* AR.  On June 10, 2015, Yorktel filed a motion for judgment upon the administrative record.  *See generally* Pl. Mot.  On June 24, 2015, the government filed a motion to dismiss or, in the alternative, a cross-motion for judgment upon the administrative record, and a response to plaintiff's motion for judgment upon the administrative record.  *See generally* Def. Mot.  On June 24, 2015, the government filed a motion to supplement the administrative record with a declaration of LaShawn K. Feimster ("Feimster Declaration").  *See* Def. Mot. to Supp.  By leave

of the Court, the government supplemented the record with two documents related to Yorktel's appeal to SBA-OHA on June 9, 2015. *See generally* Jt. Mot. to Supp. AR, June 8, 2015; Order, June 9, 2015. On June 9, 2015, the government also corrected the administrative record with a System for Award Management report. *See generally* Def. Mot. to Correct AR, June 9, 2015; Order Granting Mot. to Correct, June 9, 2015. On July 6, 2015, Yorktel filed a response to the government's motions and a reply in support of its motion for judgment upon the administrative record. *See generally* Pl. Reply. On July 13, 2015, the government filed its reply in support of its motion to dismiss or, in the alternative, cross-motion for judgment upon the administrative record. *See generally* Def. Reply.

On July 6, 2015, Yorktel filed a response opposing the government's motion to supplement the administrative record. Pl. Opp. to Def. Mot. to Supp. On July 13, 2015, the government filed a reply to Yorktel's response opposing supplementation of the administrative record with the Feimster Declaration and an unopposed motion to supplement the administrative record with an update on the SBA size appeal at SBA-OHA. Def. Reply to Mot. to Supp.; Unopposed Mot. to Supp., July 13, 2015. On July 27, 2015, the Court, at the request of the parties, stayed this matter pending the United States Court of Appeals for the Federal Circuit's resolution of *Rotech Healthcare, Inc. v. United States*. *See generally* Mot. to Stay; Order, July 27, 2015. On April 11, 2016, the Court, at the request of the parties, continued the stay of this matter pending the SBA-OHA's resolution of plaintiff's size protest appeal. Order, April 11, 2016; *see* Joint Status Report, April 11, 2016.

On June 2, 2016, the parties notified the Court that the SBA-OHA had decided Yorktel's size protest appeal. Joint Status Report, June 2, 2016. On June 3, 2016, the Court lifted the stay of this matter and granted the government's motion to supplement the record with the SBA-OHA size appeal documents. Order, June 3, 2016. Thereafter, on June 21, 2016, the government supplemented the administrative record to include the complete record of the size protest at the SBA-OHA. *See* Notice, June 21, 2016.

On August 5, 2016, plaintiff filed an initial supplemental brief. Pl. Supp. Brief. On September 9, 2016, the government filed an initial supplemental brief. Def. Supp. Brief. On September 23, 2016, plaintiff filed a response to the government's supplemental brief and a reply in support of its supplemental brief. Pl. Supp. Reply Brief. On October 7, 2016, the government

filed a response to plaintiff's supplemental brief and a reply in support of its own supplemental brief.  Def. Supp. Reply Brief.

The matters having been fully briefed, the Court addresses the pending motions.

## III.   LEGAL STANDARDS

### A.  Bid Protest Jurisdiction And Standing

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  And so, to have standing to pursue a bid protest action a protestor must be an "interested party."

The United States Court of Appeals for the Federal Circuit has applied the Competition in Contracting Act's definition of interested party in the context of bid protest matters.  *Am. Fed. of Gov. Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also* 31 U.S.C. §§ 3551-56.  The Competition in Contracting Act defines the term "interested party" to mean an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract."  *Id.*

With respect to determining whether a protestor has a "direct economic interest," the Federal Circuit has also held that "'[a] protest will, by its nature, dictate the necessary factors for a 'direct economic interest.'"  *Sys. App. & Techs., Inc. v. United States,* 691 F.3d 1374, 1382 (Fed. Cir. 2012); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2009); *see also Nat'l Air Cargo Grp., Inc. v. United States*, 126 Fed. Cl. 281, 292 (2016).  The Federal Circuit has also adopted two tests to determine when a protestor has a direct economic interest.  Typically, in post-award bid protests cases, protestors are required to prove that they had a substantial chance of winning the contract.  *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).  In pre-award bid protests, the Federal Circuit has held that a protestor may demonstrate "a non-trivial competitive injury which can be redressed by judicial relief" to demonstrate a direct economic interest.  *See Weeks Marine*, 575 F.3d at 1361-62 (internal quotations omitted).

In addition, this Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under the Administrative Procedure Act standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In this regard, the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1332-33 (internal citations omitted)

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). In addition, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted); *see Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as

"arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

### B.   Judgment Upon The Administrative Record

Generally, Rule 52.1 limits this Court's review of an agency's procurement decision to the administrative record.  RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence.").  And so, unlike a summary judgment motion brought pursuant to Rule 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under Rule 52.1.  *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56.  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### C.   Supplementing The Administrative Record

The United States Court of Appeals for the Federal Circuit has held that the "focal point" of the Court's review of an agency's procurement decision "'should be the administrative record already in existence, not some new record made initially in the reviewing court.'"  *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  By limiting its review to the "record actually before the agency" the Court guards against "using new evidence to 'convert the arbitrary and capricious standard'" applicable to bid protest actions "'into effectively de novo review.'"  *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)).  And so, "the parties' ability to supplement the administrative record is limited" and the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA."  *Id.* at 1379-81; *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013); *DataMill, Inc. v. United States*, 91 Fed. Cl. 722, 732 (2010) (Plaintiff "bears the burden of explaining why the agency-assembled administrative record is insufficient.").

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps.  *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 672 (2009).  But, supplementation of

the administrative record is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision. *Id*. And so, supplementation of the administrative record is appropriate when necessary to provide the Court with a record containing the information upon which the agency relied when it made its decision, as well as any documentation revealing the agency's decision-making process. *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 420; *see also Beta Analytics Int'l, Inc. v. United States*, 61 Fed. Cl. 223, 225 (2004) ("'[S]upplementation might be necessary to help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision, particularly when a subjective value judgment has been made but not explained.'") (quoting *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343-44 (2004) (finding that supplementation is warranted when the record is missing "relevant information that by its very nature would not be found in an agency record-such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations")).

### D.  Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037. These four factors are to be considered collectively, rather than individually, such that "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief. *Id*.

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004), *reh'g* and *reh'g en banc denied* (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 312 (Fed. Cir. 2007)). However, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citing *PGBA, LLC*, 389 F.3d at 1228-29) (citation omitted).

## IV.   LEGAL ANALYSIS

In its motion for judgment upon the administrative record, Yorktel challenges NASA's determination that it is ineligible for award for the SEWP V Contract because Yorktel does not meet the size standard for the contract. *See generally* Pl. Mot. Specifically, Yorktel alleges that the RFP provides for a 500-employee size standard for non-manufacturers and that Yorktel is a non-manufacturer that meets this standard, despite the fact that the NAICS code for the contract imposes a 150-employee size standard. *Id*. at 9-13. The government counters in its motion to dismiss that the Court should dismiss this matter for lack of subject-matter jurisdiction because: (1) as a contract awardee, Yorktel cannot pursue this bid protest action, and (2) Yorktel's challenge to the size standard for the SEWP V Contract is untimely under *Blue & Gold Fleet, L.P. v. United States*. Def. Mot. at 14-24; *see Blue & Gold Fleet*, 492 F.3d at 1313. In the alternative, the government argues that it is entitled to judgment upon the administrative record in its favor, because the RFP for the SEWP V Contract requires that Yorktel meet the 150-employee size standard. Def. Mot. at 24-35. The government has also moved to supplement the administrative record in this matter with a declaration of LaShawn Feimster, the contracting officer for the SEWP V Contract. Def. Mot. to Supp.

For the reasons discussed below, the Court may exercise its bid protest jurisdiction under the Tucker Act to consider Yorktel's claim and Yorktel also has standing to pursue its claim. Nonetheless, the Court must dismiss this matter because Yorktel's claim challenging the size standard for the SEWP V Contract is untimely.  In addition, the administrative record in this matter also shows that Yorktel has not met the size standard required for the SEWP V Contract. Lastly, the government also has not demonstrated that the omission of the declaration of Ms. Feimster would preclude meaningful judicial review of this matter by the Court.  And so, the Court grants-in-part the government's motion to dismiss; grants the government's motion for judgment upon the administrative record; denies Yorktel's motion for judgment upon the administrative record; and denies the government's motion to supplement the administrative record.

### A.      Supplementation Of The Administrative Record Is Not Warranted

As a preliminary matter, the Court must deny the government's request to supplement the extensive administrative record in this matter with the declaration of LaShawn K. Feimster.  *See generally* Def. Mot. to Supp.  It is well established that a "part[y's] ability to supplement the administrative record is limited" and the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA."  *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379-81; *see also Caddell Constr. Co., Inc.*, 111 Fed. Cl. at 93; *DataMill, Inc.*, 91 Fed. Cl. at 732 (Plaintiff "bears the burden of explaining why the agency-assembled administrative record is insufficient.").  And so, the Court will only supplement the administrative record when necessary to provide the Court with a record containing the information upon which the agency relied when it made its decision, as well as any documentation revealing the agency's decision-making process.  *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 420; *see also Beta Analytics Int'l, Inc.*, 61 Fed. Cl. at 225 ("'[S]upplementation might be necessary to help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision, particularly when a subjective value judgment has been made but not explained.'") (quoting *Orion Int'l Techs.*, 60 Fed. Cl. at 343-44 (finding that supplementation is warranted when the record is missing "relevant information that by its very nature would not be found in an agency record-such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations")).

In this case, the government argues that supplementation of the administrative record with the proffered declaration is necessary "because the administrative record does not explain how NASA evaluated offerors' small business status" for the SEWP V Contract.  Def. Mot. to Supp. at 2.  But, as Yorktel correctly notes in its opposition to the government's motion to supplement, "[t]he issue [in this litigation] is not what the Contracting Officer believed at the time she awarded a contract to Yorktel or the reasonableness of those beliefs . . . . The issue of law for the Court is whether the Solicitation established a 500-employee standard that plaintiff meets."  Pl. Opp. to Def. Mot. to Supp. at 3.

There is already an extensive administrative record detailing the size standard and the requirements under the RFP for the SEWP V Contract.  On June 9, 2015, the government supplemented the record with two documents related to Yorktel's appeal before SBA-OHA regarding the size standard for the SEWP V Contract.  *See generally* Jt. Mot. to Supp. AR, June 8, 2015; Order, June 9, 2015.  The government also corrected the administrative record by leave of the Court with a System for Award Management report for Yorktel on that date.  *See generally* Def. Mot. to Correct AR, June 9, 2015; Order Granting Mot. to Correct, June 9, 2015.  Finally, on June 21, 2016, the government further supplemented the administrative record to include the complete record of the size protest before the SBA-OHA.  *See* Notice, June 21, 2016

Given this, adding the declaration of Ms. Feimster to the administrative record would run afoul of the United States Court of Appeals for the Federal Circuit's clear directive in *Axiom* that this Court should not supplement the administrative record unless the omission of the information "precludes effective judicial review."  *Axiom Res. Mgmt.*, 564 F.3d 1380 (citation omitted).  And so, the Court denies the government's motion to supplement.

**B.    The Court May Consider Yorktel's Bid Protest Claim**

The Court must also deny the government's request to dismiss this bid protest matter, because the Court may exercise its bid protest jurisdiction to consider Yorktel's claim under 28 U.S.C. § 1491(b).  Section 1491(b) provides that this Court may consider a bid protest claim brought by an "interested party" objecting to, among other things, "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1); *see also Distributed Sols., Inc. v. United States,* 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008) ("A non-frivolous allegation of a statutory or regulatory violation in connection with a

procurement or proposed procurement is sufficient to establish jurisdiction.").  For the reasons discussed below, Yorktel satisfies these statutory prerequisites.

### 1.    Yorktel Alleges A Violation Of Procurement Law

First, the administrative record in this case makes clear that Yorktel alleges a violation of a statute or regulation in connection with the procurement for the SEWP V Contract.  In particular, Yorktel alleges in the complaint and in its motion for judgment upon the administrative record that NASA's determination that Yorktel is ineligible for award of the SEWP V Contract violates the Competition in Contracting Act, 10 U.S.C. § 2305(b)(1), section 15.305(a) of the FAR, and the statutory non-manufacturer rule, 15 U.S.C. § 637(a)(17).  Compl. at ¶¶ 1-2; Pl. Mot. at 1-2.  And so, Yorktel has satisfied section 1491(b)'s requirements that it allege a "violation of statute or regulation in connection with a procurement."  28 U.S.C. § 1491(b)(1); *see also RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1288-89 (Fed. Cir. 1999).

Moreover, contrary to the government's contentions in its motion to dismiss, the fact that Yorktel is a contract awardee does not necessarily preclude Yorktel from pursuing its bid protest claim.  As this Court recently recognized in *National Air Cargo Group v. United States*, the Federal Circuit has rejected the view that contract awardees are barred from filing bid protests and may only pursue a claim against the government pursuant to the Contract Disputes Act ("CDA").  126 Fed. Cl. at 290 (discussing *Sys. App. & Techs., Inc.,* 691 F.3d at 1381).   In this regard, the Federal Circuit held in *Systems Application & Technologies, Inc. v. United States* that a contract awardee's claims are not necessarily CDA claims and that a protestor's status as a contract awardee is not germane to the question of this Court's jurisdiction.  691 F.3d at 1381-82 (stating "[i]n this case, the Army had not yet implemented corrective action.  Moreover, SA–TECH was the contract awardee.  Neither of these facts are material to the question of jurisdiction.").  And so, the Federal Circuit concluded in that case that the contract awardee's attempt to enjoin the government from terminating its contract did not transform an otherwise proper protest under the Tucker Act into a claim which could only be adjudicated under the Contract Disputes Act.  *Id.*

Yorktel's bid protest claim here−like the claims in *Systems Application* and *National Air Cargo*−arises from an alleged violation of procurement law, and not from a breach of Yorktel's

contract with the government.  *Nat'l Air Cargo Grp.*, 126 Fed. Cl. at 291 (holding that "a contract awardee will fail to make a claim within this [C]ourt's bid protest jurisdiction under Paragraph 1491(b)(1) if the claim is one for breach of its own contract.  Such a claim would be a CDA claim, not a bid protest."); *cf. Coast Prof'l, Inc. v. United States,* 828 F.3d 1349, 1355 (Fed. Cir. 2016).  Such a claim is not a CDA claim.  And so, the Court may consider this claim under the Tucker Act.  *See* 28 U.S.C. § 1491(b).

### 2.    Yorktel Has Standing To Bring Its Claim

The record evidence in this matter also shows that Yorktel is an "interested party" with standing to bring this bid protest case.  *See* AR at 2310.  Although the Tucker Act does not define the term "interested party," the Federal Circuit has held that an "interested party" is an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract."  *Am. Fed. of Gov. Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also* 31 U.S.C. §§ 3551-56.  To establish a direct economic interest in a post-award bid protest matter, a protestor must show that it had a substantial chance of receiving the award for the contract.  *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).  This test is not, however, the only test that the Court may employ to ascertain a direct economic interest.  *See Weeks Marine, Inc.*, 575 F.3d at 1361-62.  "Rather, '[a] protest will, by its nature, dictate the necessary factors for a 'direct economic interest.'"  *Nat'l Air Cargo Grp.*, 126 Fed. Cl. at 293 (quoting *Sys. App. & Techs., Inc*, 691 F.3d at 1382) (brackets existing).

Here, there is no dispute that Yorktel is an "actual offeror" and that Yorktel has been awarded the SEWP V Contract.  *See* AR at 1184-808, 2150-294.  The government also acknowledges in its briefs that Yorktel would have standing to bring this bid protest matter if the SBA's Office of Hearings and Appeals determined that Yorktel is not a small business for purposes of the SEWP V Contract, thereby requiring NASA to terminate Yorktel's contract.  AR at 2620-30; *see* Def. Reply at 6; *see also* Def. Mot. at 15 ("If OHA determines that Yorktel does not meet the required minimum size standard and recommends the termination of Yorktel's contract, only then could Yorktel attempt to file a bid protest. . . .").  That is precisely the circumstance presented here.  On May 18, 2016, the SBA-OHA issued a decision finding that

Yorktel is not an eligible small business for the SEWP V Contract.  AR at 2620-30.  And so, there is no genuine dispute that Yorktel has standing.

Yorktel has also demonstrated that it has a direct economic interest in this procurement. *See* AR at 1184-808.  If NASA terminates Yorktel's contract, Yorktel will no longer be eligible to compete for work orders issued under the SEWP V Contract.  *See*, *e.g. id*. at 2307, 2310. Given this, the specific nature of this bid protest shows that Yorktel has a direct economic interest in the award of the SEWP V Contract and in NASA's anticipated termination of that contract.[4]  And so, Yorktel is an "interested party" with standing to pursue this bid protest matter.

## C.      Yorktel's Has Waived Its Challenge To The RFP's Size Standard

While Yorktel has established jurisdiction and that it has standing to pursue its bid protest claim, the administrative record in this matter, nonetheless, demonstrates that the Court must dismiss this matter because Yorktel's claim is untimely.  This Court has long recognized that an offeror wishing to challenge the terms of a solicitation must do so before offers are due.  *Blue & Gold Fleet*, 492 F.3d at 1313-15 (holding that a protester who knew the agency's interpretation of a solicitation but failed to challenge it before bids were due, waived its ability to object afterwards).  It is also well established that when a solicitation contains a patent ambiguity, an offeror must bring the error to the attention of the contracting officer prior to the close of the procurement process, or otherwise waive the ability to pursue the claim in this Court.  *Id*.  And so, Yorktel may not challenge an alleged error or patent ambiguity in the RFP for the SEWP V Contract here, if it failed to raise this error or ambiguity during the procurement process.  *Id*.

In this case, the administrative record shows that Yorktel waived the ability to pursue its challenge to the size standard for the SEWP V Contract because it did not raise the patent ambiguity in the RFP regarding the size standard for the RFP before the close of the procurement process.  First, the administrative record makes clear that NASA addressed and attempted to

---

[4] Yorktel also meets the pre-award bid protest standard for direct economic interest–"a non-trivial competitive injury which can be redressed by judicial relief."  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009).  Specifically, if its contract is terminated, Yorktel will suffer a non-trivial competitive injury, because Yorktel will be unable to submit offers on orders issued under the contract.  *See* AR at 2307, 2310.

clarify the RFP's size standard requirement in the agency's responses to several questions from offerors about the size standard for the SEWP V Contract.  In this regard, the record evidence shows that NASA responded to several questions about the size standard for the SEWP V Contract during the question-and-answer phase of the procurement.  AR at 975-1183.  For example, in response to question 511 regarding the size standard for the subject contract, NASA replied that the proper size standard for the SEWP V Contract was 150 employees.  *Id*. at 1069.  In response to question 861, NASA also clarified that the size standard for the contract was 150 employees and that businesses with more than 150 employees would be considered "other than small" and would need to complete a small business subcontracting plan to remain eligible for award.  *Id*. at 1123.  NASA further clarified in response to other questions that the size standard for the contract is 150 employees.  *Id*. at 1139, 1144, 1156.  The record evidence also shows that NASA published these questions and answers on a website for the SEWP V procurement and that this information was readily available to all offerors, including Yorktel.  *See* AR at 2.

The record evidence also shows that NASA amended the RFP to incorporate the agency's responses to the aforementioned questions into the RFP's size standard requirement.  In this regard, this Court has long recognized that agency responses during the question-and-answer process, "when circulated to all offerors as an attachment to an amendment signed by the contracting officer, constitute an amendment of the solicitation."  *Bayfirst Solutions, LLC v. United States*, 102 Fed. Cl. 677, 689 n.15 (2012) (citing *Scientific Research Corp.*, B-260478, 1995 WL 404157, at *5 (Comp. Gen. July 10, 1995)).  In this case, the administrative record shows that three amendments to the RFP−Amendments 7, 8, and 10−were circulated to offerors and that these amendments were also accompanied by a cover letter that includes the link to the website that contained the questions and answers regarding the size standard for the SEWP V Contract.[5]  *See* AR at 265-66, 465-66, 631-32, 802.  In addition, these cover letters have been

---

[5] The cover letter to RFP Amendment 7 specifically provides that "[p]lease note that Set #5 Answers to RFP questions are located at the following website: [website link].  *Id*. at 466; *see also id*. at 265 and 631 (similar language in the cover letters to Amendment 10 and 8).  The cover letter to RFP Amendment 7 also provides that "[p]otential Offerors are requested to periodically monitor the website for updates."  *Id*. at 466; *see also id*. at 265 (same language in cover letter to Amendment 10), 631 (same language in cover letter to Amendment 8).  Also relevant here, the cover letters for RFP Amendments 7, 8, and 10 notified offerors that "[a]ll of the documents related to this procurement, including this letter, the solicitation, attachments, and any amendments will be obtainable electronically."  *Id*. at 266, 466, 631.

signed by the contracting officer and the amendment attached to each letter has also been signed by the contracting officer. *Id.* at 266-67, 466-67, 632-33, 803-04. And so, the evidence in the record demonstrates that NASA amended the RFP to incorporate the agency's responses to questions about the size standard. *Bayfirst Solutions*, 102 Fed. Cl. at 689 n.15 (citing *Scientific Research Corp.*, B-260478, 1995 WL 404157, at *5 (Comp. Gen. July 10, 1995)).

The record evidence also shows that NASA's responses to questions about the size standard for the SEWP V Contract created a patent ambiguity in the RFP. In this regard, the RFP provides that:

> The NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet (SF 1449). However, the small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees.

AR at 130; *see* 48 C.F.R. § 52.212-1. NASA, however, clarified in the agency's responses to questions regarding the size standard for the SEWP V Contract that the size standard is 150 employees. AR at 1069, 1123, 1139, 1144, 1156. These responses created an ambiguity about the size standard for the RFP that should have been evident to Yorktel and to other offerors. As the Government Accountability Office has recognized, the responsibility is on the offeror to seek clarification or challenge the patent ambiguity where amendments made through the question-and-answer process create an inconsistency with other solicitation terms. *Linguistics Systems, Inc.*, B-296221, 2005 CPD ¶ 104, 2005 WL 1299516, at *1 (Comp. Gen. June 1, 2005). Yorktel had the obligation in this case to raise the patent ambiguity in the RFP regarding the appropriate size standard before the end of the procurement process. *See Blue & Gold Fleet*, 492 F.3d at 1313; *see Pyramid Real Estate Servs., LLC v. United States*, 95 Fed. Cl. 125, 137 n.16 (2010) (rejecting an offeror's protest because it failed to raise concerns about the solicitation during the proposal process despite the contracting agency's answers and amendments to related provisions). Because it is without dispute that Yorktel did not do so here, Yorktel's claim challenging this size standard is untimely.[6] *See* Pl. Reply at 15-16; *Blue & Gold Fleet,* 492 F.3d at 1313.

---

[6] The government also argues in its motion to dismiss that plaintiff has failed to exhaust its administrative remedies because the matter is pending before SBA-OHA. *See* Def. Mot. at 16; RCFC 12(b)(6). Because

### D.   Yorktel's Claim Is Unsupported By The RFP And Applicable Law

It is also important to note that, even if Yorktel could pursue its challenge of the size standard for the SEWP V Contract in this litigation, this claim is unsupported by the terms of the RFP and the statutory non-manufacturer rule.  As discussed above, Yorktel maintains in this matter that the RFP provides for a 500-employee size standard for non-manufacturers, notwithstanding the lower 150-employee size standard imposed by the NAICS code for this procurement.  *See, e.g.*, Pl. Mot. at 1.  Yorktel further maintains that it is a non-manufacturer and meets the 500-employee size standard and, thus, is eligible for award of the contract.  Yorktel's contentions are, however, belied by the plain language in the RFP and applicable law.

As an initial matter, the RFP does not provide for a 500-employee size standard for non-manufacturers.  The RFP provides that:

> (a) *North American Industry Classification System (NAICS) code and small business size standard*.  The NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet (SF 1449).  However, the small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees.

AR at 130; *see* 48 C.F.R. § 52.212-1.  While this provision is, perhaps, inartfully drafted, the Court reads the language in the first sentence of this provision, which states that "[t]he NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet," to require that all offerors comply with the size standard imposed by this NAICS code.  It is undisputed that the second sentence in this provision pertains to non-manufacturers. *See* Pl. Mot. at 9; Def. Mot. at 24.  And so, the Court reads the second sentence in the provision to further require that offerors who are non-manufacturers *also* satisfy a size standard of 500 or less employees, to be eligible to compete for the contract.

When read in its entirety, the Court construes the above provision to require that a non-manufacturer first meet the 500 employees or less size standard to compete for the contract and to also impose the more restrictive size standard of 150 employees or less under the NAICS code

---

the size protest before SBA-OHA has concluded, the Court finds that this issue is now moot.  *See* AR at 2620-30.

in order for the non-manufacturer to be eligible for contract award.[7]  And so, to the extent that Yorktel qualifies as non-manufacturer under the statutory non-manufacturer rule, the RFP requires that Yorktel meet the more restrictive, 150-employee, size standard to be eligible for contract award.  AR at 4

This interpretation of the RFP's size standard is reinforced by the plain language of the statutory non-manufacturer rule.  15 U.S.C. § 637(a)(17).  That rule provides, in relevant part, that:

> (B) To be in compliance with the requirements [of the non-manufacturers rule], such a business concern shall— . . .
>
>> (ii) *be a small business concern under the numerical size standard for the Standard Industrial Classification Code assigned to the contract solicitation on which the offer is being made;*

15 U.S.C. § 637(a)(17) (emphasis supplied); *see Size Appeal of OSC Solutions, Inc.*, No. SIZ-5253, 2011 WL 2520006, *67 (OHA June 23, 2011).  The statutory non-manufacturer rule, thus, requires that an offeror seeking coverage under the rule satisfy the size standard imposed by the NAICS code for the relevant contract.  15 U.S.C. § 637(a)(17).

In this case, it is without dispute that Yorktel does not satisfy the 150-employee size standard under the NAICS code for the SEWP V Contract.  Pl. Mot. at 5.  And so, Yorktel's claim that the NASA erred in finding it ineligible for award of the SEWP V Contract here is without merit.

### E.    Injunctive Relief Is Inappropriate

Given the jurisdictional and substantive deficiencies in Yorktel's bid protest claim discussed above, Yorktel also fails to demonstrate that it is entitled to the injunctive relief that it seeks in this matter.  As discussed above, Yorktel's challenge of the size standard for the SEWP V Contract is untimely and it is also unsupported by the RFP and applicable law.  And so, where, as is the case here, the evidence demonstrates that a protestor will not succeed upon the merits of

---

[7] Given this, where the size standard imposed by the NAICS code is less than 500 employees−as is the case here−a non-manufacturer must satisfy the more restrictive size standard imposed by the NAICS code to be eligible for contract award.  On the other hand, where the size standard for the applicable NAICS code exceeds 500 employees, a non-manufacturer would have to meet the more restrictive 500-employee size standard to be eligible for contract award.

its claim, Yorktel cannot prevail upon its claim for injunctive relief.  *Cf. Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)) ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction" or a temporary restraining order); *Nat'l Steel Car, Ltd.*, 357 F.3d at 1325 (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).

## V.   CONCLUSION

In sum, while the Court may generally consider this matter under its bid protest jurisdiction under the Tucker Act, Yorktel has waived its challenge to the size standard for the SEWP V Contract by failing to raise this claim before the end of the procurement process.  The RFP and applicable law also do not support Yorktel's claim in this case.  In addition, supplementation of the administrative record with the declaration of the contracting officer for the procurement at issue is not necessary for meaningful judicial review of this matter.

And so, for the foregoing reasons, the Court:

1. **GRANTS-IN-PART** the government's motion to dismiss;
2. **GRANTS** the government's motion for judgment upon the administrative record;
3. **DENIES** plaintiff's motion for judgment upon the administrative record; and
4. **DENIES** the government's motion to supplement the administrative record with the Feimster Declaration.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on May 14, 2015.  This Memorandum Opinion and Order shall therefore be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

The Court hereby **ORDERS** the parties to **FILE**, by **February 1, 2017**, a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge